IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CARL GREIG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.5:23-cv-00030 |
| | § | |
| TEXAS A&M UNIVERSITY - TEXARKANA, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

**COMES NOW** Plaintiff Carl Greig ("Plaintiff" or "Greig") and, in support of his causes of action, alleges as follows:

### I. PARTIES

1. Plaintiff is a citizen of the state of Texas.

2. Defendant Texas A&M University – Texarkana ("Defendant" or "Texas A&M") is a domestic non-profit corporation organized and existing under the laws of the State of Texas with its principal place of business located in College Station, Texas. Defendant also does business in Texarkana by virtue of having a university campus in Texarkana.

### II. JURISDICTION AND VENUE

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.

4. Venue properly lies in this Court because all acts and omissions giving rise to this claim took place in Bowie County, which is in the District and Division in which suit has been filed.

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action.  On December 21, 2022, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

### III.   FACTS SUPPORTING PLAINTIFF'S CLAIMS

6.      Defendant is a public state university system.

7.      Greig is a 58-year-old white male who worked for Defendant as the Assistant Vice President of Student Affairs for approximately twenty-five years.  During his employment, Greig had many notable achievements and consistently received favorable reviews until July 2022.  Prior to July 2022, Greig had never been disciplined, nor told that his job performance fell below acceptable standards.

8.      Part of Greig's job duties included investigating student complaints about other students' violations of Defendant's Code of Conduct and other offensive behavior.

9.      In August of 2021, a student ("Student 1") filed a written complaint with Greig's office complaining that another student ("Student 2") had used the word "Nigga" in her presence while on a trip to the mall several months earlier (Spring 2021).  At the time the offensive word was used, the students were good friends and Student 1 did not complain that she was offended by Student 2's statement.  The students' friendship deteriorated after the Spring of 2021 and then had a series of interpersonal problems including, but not limited to, Student 1 complaining to Greig about Student 2's offensive statement and Student 2 claiming that Student 1 had threatened to "beat her ass."

10.     Greig knew of the students' long history of interpersonal conflict.  Greig conducted a thorough investigation into Student 1's complaint.  Greig conducted research regarding Student 2's First Amendment rights and sought guidance from the System General Counsel and the TAMU System Title IX Coordinator on how to respond to Student 1's complaint.  Based on advice he received from both legal counsel and the TAMU System Title IX Coordinator and Grieg's own research, Greig decided that punishing Student 2 would violate her First Amendment rights and that she had not violated the Student Code of Conduct in effect at that time.  Greig counselled Student 2 on three separate occasions about how offensive the word she used was and advised her not to use the word again.  Student 1 was dissatisfied that Greig had not removed Student 2 from her position on Student Government and in a sorority and elevated her complaint to the President who assigned the investigation to the Human Resources Department that had no authority over or involvement with student complaints.  The Human Resources Director conducted her own investigation into Student 2's statement and ultimately did not punish Student 2.

11.     After the Human Resources Director's investigation, Defendant began reducing Greig's job duties.  Defendant removed Greig from investigating any student complaint that involved race and from any involvement in any Title IX case.  Defendant also cancelled, without explanation, an open position for which Greig had selected a candidate.

12.     In the aftermath of Grieg's decision not to discipline Student 2, Defendant held a "Town Meeting," open to students and faculty.  At the Town Meeting, a faculty member demanded that Greig be replaced by a person of color.  Defendant's President attended the Town Hall and did not reject the faculty member's demand.

13.     In November 2021, Greig's supervisor, the Vice President of Student Affairs, advised him that he should consider looking for a new job because Defendant intended to blame Greig for all

race-related issues after his failure to punish Student 2.  Greig's supervisor also said Greig made the right decision not to punish Student 2.

14. Shortly thereafter, Greig's supervisor resigned; Defendant replaced Greig's supervisor with an interim Vice President.  In March of 2022, the interim Vice President began to criticize Greig's job performance and alleged performance deficiencies, including incidents from several years prior and a list of complaints from students and employees.  Greig responded to the interim Vice President's allegations.  Thereafter, Defendant never addressed these allegations with Greig.  In July 2022, for the first time in his twenty-five years' of employment, Greig received a "not meeting expectations" rating on his yearly evaluation.  He was told by the interim Vice President that the students wanted someone younger in Greig's position and that he felt Greig could not relate to people of color.  Greig was given no guidance or goals to follow to improve his allegedly deficient performance and instead was told in August 2022 that he must resign or be terminated.

15. Upon information and belief, Greig was replaced by an African-American female who is several years younger than he.

## V. STATEMENT OF CLAIMS

### COUNT ONE:  DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII

16. Greig incorporates Paragraphs 1-15 as if fully set forth herein.

17. Defendant discriminated against Greig based on his race by removing his job responsibilities and ultimately terminating his employment.  Defendant took these adverse job actions against Greig because of his race.

18. As a result of Defendant's actions, Greig suffered from and continues to suffer damages and hereby sues.

## VI. REMEDIES

19. As a result of Defendant's unlawful damages, Greig's has suffered and will continue to suffer damages.

20. WHEREFORE, Greig prays that the Court grant him the following relief:

   a. Back pay and front pay in a precise amount to be determined by the jury;

   b. Compensatory damages against Defendant as a consequence of Defendant's unlawful actions, in a precise amount to be determined by the jury;

   c. Prejudgment and post-judgment interest;

   d. Reasonable attorneys' fees, expenses and costs, as specifically authorized by statute, to be calculated by the Court pursuant to the established procedures and precedents; and

   e. Such other relief as the Court shall deem just and proper.

## VI. JURY TRIAL DEMAND

Greig demands a trial by jury on all issues of facts and damages raised in this case.

Respectfully submitted,

**Carter Law Group, P.C.**
633 W. Davis St.
Suite 262
Dallas, Texas 75208
(214) 390-4173 (Telephone)

By: /s/*Amy Carter*
Amy Carter
State Bar No. 24004580
amy@clgtrial.com

**The Coles Firm**
4925 Greenville Ave.
Suite 200
Dallas, Texas 75206
(214) 443-7860 (Telephone)

/s/Michael Coles

Michael Coles
Texas Bar No. 24007025
MikeC@colesfirm.com

**ATTORNEYS FOR PLAINTIFF**