IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| CARL GREIG | § | |
| | § | |
| v. | § | Case No. 5:23-CV-00030-JRG-JBB |
| | § | |
| TEXAS A&M UNIVERSITY TEXARKANA | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court:

**Defendant's Motion to Dismiss Plaintiff's First Amended Original Complaint (Dkt. No. 17).**

The Court, having reviewed the relevant briefing, recommends the motion to dismiss be **DENIED**.

**I. BACKGROUND**

Plaintiff Carl Greig ("Plaintiff"), proceeding *pro se*, brings this employment discrimination lawsuit against Defendant Texas A&M University Texarkana ("TAMUT"). In his amended complaint, Plaintiff alleges he is a fifty-eight year old white male who worked for TAMUT as the Assistant Vice President of Student Affairs for approximately twenty-five years. Dkt. No. 11, ¶ 7. According to Plaintiff, part of his job duties included investigating student complaints about other students' violations of TAMUT's Code of Conduct and other offensive behavior. *Id*., ¶ 8. Plaintiff alleges he received favorable reviews until July 2022 and had never been discipled or told that his job performance fell below acceptable standards prior to July 2022. *Id.*, ¶ 7. Plaintiff alleges he was discriminated against on the basis of race based on a single incident where he investigated,

1

but did not discipline, a student who used a negative racial epithet. *Id.*, ¶¶ 9-10. Specifically, Plaintiff alleges as follows:

> In August of 2021, a student ("Student 1") filed a written complaint with [Plaintiff's] office complaining that another student ("Student 2") had used the word "Nigga" in her presence while on a trip to the mall several months earlier (Spring 2021). At the time the offensive word was used, the students were good friends and Student 1 did not complain that she was offended by Student 2's statement. The students' friendship deteriorated after the Spring of 2021 and then had a series of interpersonal problems including, but not limited to, Student 1 complaining to [Plaintiff] about Student 2's offensive statement and Student 2 claiming that Student 1 had threatened to "beat her ass."
>
> [Plaintiff] knew of the students' long history of interpersonal conflict. [Plaintiff] conducted a thorough investigation into Student 1's complaint. [Plaintiff] conducted research regarding Student 2's First Amendment rights and sought guidance from the System General Counsel and the TAMU System Title IX Coordinator on how to respond to Student 1's complaint. Based on advice he received from both legal counsel and the TAMU System Title IX Coordinator and [Plaintiff's] own research, [Plaintiff] decided that punishing Student 2 would violate her First Amendment rights and that she had not violated the Student Code of Conduct in effect at that time. [Plaintiff] counselled Student 2 on three separate occasions about how offensive the word she used was and advised her not to use the word again. Student 1 was dissatisfied that [Plaintiff] had not removed Student 2 from her position on Student Government and in a sorority and elevated her complaint to the President who assigned the investigation to the Human Resources Department that had no authority over or involvement with student complaints. The Human Resources Director conducted her own investigation into Student 2's statement and ultimately did not punish Student 2.

*Id.* (internal numbering omitted).

Plaintiff alleges TAMUT began reducing his job duties following the Human Resource Director's investigation; removed Plaintiff from investigating any student complaint that involved race and from any involvement in any Title IX case; and cancelled, without explanation, an open position for which Plaintiff had selected a candidate. *Id.*, ¶ 11. Plaintiff further alleges as follows:

> In the aftermath of [Plaintiff's] decision not to discipline Student 2, Defendant held a "Town Meeting," open to students and faculty. At the Town Meeting, a faculty member demanded that [Plaintiff] be replaced by a person of color. Defendant's President attended the Town Hall and did not reject the faculty member's demand.

2

> In November 2021, [Plaintiff's] supervisor, the Vice President of Student Affairs, advised him that he should consider looking for a new job because Defendant intended to blame [Plaintiff] for all race-related issues after his failure to punish Student 2. [Plaintiff's] supervisor also said [Plaintiff] made the right decision not to punish Student 2.

*Id.*, ¶¶ 12-13 (internal numbering omitted).

According to Plaintiff, shortly thereafter, Plaintiff's supervisor resigned, and TAMUT replaced Plaintiff's supervisor with an interim Vice President. *Id.*, ¶ 14. Plaintiff alleges that in March of 2022, the interim Vice President began to criticize Plaintiff's job performance and alleged performance deficiencies, including incidents from several years prior and a list of complaints from students and employees; Plaintiff responded to the interim Vice President's allegations, after which time TAMUT never addressed the allegations with Plaintiff. *Id*.

According to Plaintiff, in July of 2022, for the first time in his twenty-five years' of employment, Plaintiff received a "not meeting expectations" rating on his yearly evaluation and was told by the interim Vice President that the students wanted someone younger in Plaintiff's position and that he felt Plaintiff could not relate to people of color. *Id*. Plaintiff alleges he was given no guidance or goals to follow to improve his allegedly deficient performance and instead was told in August of 2022 that he must resign or be terminated. *Id*. Upon information and belief, Plaintiff was replaced by an African-American female who is several years younger than Plaintiff. *Id.*, ¶ 15.

Plaintiff alleges TAMUT discriminated against him on the basis of basis of race in violation of Title VII by removing his job responsibilities and ultimately terminating his employment. *Id.*, ¶¶ 16-18. Plaintiff seeks back and front pay, compensatory damages, and reasonable attorneys' fees.

3

TAMUT moves to dismiss Plaintiff's race discrimination claim for failure to state a claim on which relief may be granted. *See* Dkt. No. 17. TAMUT asserts Plaintiff has failed to allege sufficient facts to establish a disparate treatment claim under Title VII. *Id.* at 4-6.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Pfang v. Lamar Inst. of Tech.*, No. 1:23-CV-93, 2023 WL 5017204, at *8 (E.D. Tex. Aug. 5, 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); also citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face")). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Id.* (quoting *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020)).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Id.* (quoting *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Id*. (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)).

In evaluating motions to dismiss filed under Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Id.* at 735 (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id*. (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). On the other hand, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Id.* (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461, n. 9 (5th Cir. 2007); also citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640, n. 2 (5th Cir. 2005)). Judicial notice may be taken of matters of public record. *Id.* (citing *Firefighters' Retirement Sys., v. EisnerAmper*, 898 F.3d 553, 558 n.2 (5th Cir. 2018)). When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents. *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches*

5

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).

### III. APPLICABLE LAW

Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] to or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297, at *7 (5th Cir. Jan. 19, 2024) (citing 42 U.S.C. § 2000e–2(a)(1)). The Fifth Circuit has recently made clear that a plaintiff is not required to suffer a permanent adverse employment decision to maintain a Title VII claim. *Id.* (citing *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc)). However, to establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must demonstrate that he was "treated less favorably because of [her] membership in [a] protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

"Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *York v. Ahuja*, No. SA-22-CV-00451-XR, 2023 WL 3996914, at *3 (W.D. Tex. June 13, 2023) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Id.* (citing *Portis v. First Nat'l Bank of New Albany, Miss.*,

6

34 F.3d 325, 328 (5th Cir. 1994)). When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework. *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Id.* Under *McDonnell Douglas*, a *prima facie* case of discrimination requires evidence that the plaintiff "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014)).

The Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *York*, 2023 WL 3996914, at *3 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.*

However, the Fifth Circuit has counseled that "it can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.* at *4 (quoting *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citing *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470-71 (5th Cir. 2016) (considering whether the plaintiff pleaded facts suggesting

that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the *McDonnell Douglas* framework))). Still, courts must not inappropriately heighten the pleading standard in Title VII cases by "subjecting plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.* (quoting *Cicalese*, 924 F.3d at 767 (citing *Swierkiewicz*, 534 U.S. at 512 (explaining "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'"))). "Such inquiries are better suited to summary judgment." *Id.* (quoting *Cicalese*, 924 F.3d at 767 (citing *Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014) (explaining "that further assessment of [appellant's] claim is fact-intensive and better suited for the summary-judgment or trial stage"))).

## IV. DISCUSSION

Plaintiff's Charge of Discrimination, attached to TAMUT's motion to dismiss, alleges Plaintiff began his employment with the university around October of 1996. Dkt. No. 17-1 at 1. According to Plaintiff, TAMUT disagreed with the way Plaintiff handled a race-based harassment complaint, and Plaintiff was thereafter subjected to "different terms and conditions of employment, including, but not limited to, cancelling one of [his] hirings, taking away job responsibilities from [him], receiving a negative performance review, and falsely accused of not handling ADA complaints and other tasks correctly." *Id*. Plaintiff alleges he was forced into early retirement in August of 2022. *Id.* Plaintiff contends he was discriminated against because of his race (white) in violation of Title VII. *Id.*

TAMUT moves to dismiss Plaintiff's Title VII race discrimination claim because Plaintiff does not provide a "single detail regarding a similarly situated employee at TAMUT." Dkt. No. 17

8

at 6. TAMUT argues "disparate treatment claims require the Plaintiff to plead that other similarly situated individuals were treated differently." *Id.*

TAMUT's primary argument wrongly suggests that Plaintiff is required to establish a *prima facie* case of disparate treatment. *Woods v. Louisiana Special School District*, No. CV 23-3083, 2023 WL 8370382, at *7 (E.D. La. Dec. 4, 2023). As stated, a plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion. *Id.* (citing *Raj*, 714 F.3d at 331). Nevertheless, a plaintiff must plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible. *Id.* (citing *Cicalese*, 924 F.3d at 766). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'"[1] *Cicalese*, 924 F.3d at 767 (quoting *Raj*, 714 F.3d at 331). In other words, Plaintiff is tasked with pleading that an adverse action was taken against him "because of" his protected status, which here, is his race. *See Alusi v. City of Frisco, Texas*, No. 4:22-CV-397-SDJ, 2023 WL 5509307, at *5 (E.D. Tex. Aug. 24, 2023).

Plaintiff's allegations meet this standard and are sufficient to state a claim for disparate treatment at this early stage of the litigation. Plaintiff has sufficiently alleged that an adverse employment action was taken against him because of his race. Plaintiff has provided dates and details leading to his termination. Specifically, Plaintiff has alleged two times when either a supervisor or a faculty member suggested Plaintiff should be replaced by a person of color or could not relate to students of color.

---

[1] A protected status is an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). This includes white males, whether they are part of the minority or majority. *Hawn v. Exec. Jet Mgmt., Inc.*, 546 F. Supp. 2d 703, 717 (D. Ariz. 2008), *aff'd*, 615 F.3d 1151 (9th Cir. 2010) (citing *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (citing *McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 278–79, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976))).

TAMUT argues Plaintiff's allegations are purely conclusory and inadequate to "raise a right to relief above the speculative level." Dkt. No. 17 at 6. According to TAMUT, the alleged statements from Plaintiff's prior supervisor, while "suggestively conspiratorial," provide "no support for Plaintiff's claim that an adverse employment action was taken against him on the basis of race." *Id.* at 5 (stating the supervisor is both unidentified and "by Plaintiff's own admission had left university employment months before Plaintiff's termination, which occurred in August 2022"). Regarding the alleged statement from the Interim Vice President of Student Affairs informing Plaintiff that students at TAMUT felt Plaintiff could not connect to people of color, TAMUT argues this "statement alone would readily be understood as a communication of a serious performance issue, given Plaintiff was responsible for investigating student complaints relating to race and such investigations necessarily involve a degree of interpersonal skill." *Id*. TAMUT argues generalized feedback regarding Plaintiff's interpersonal skills from the student body or employees cannot be said to provide support for Plaintiff's claim that he was subject to adverse employment actions because of his race but rather shows the opposite: that the student body, and apparently one faculty member, felt Plaintiff's job performance was unsatisfactory, and communicated that to Plaintiff's interim supervisor. *Id*. at 5-6.

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that an employment discrimination complaint need not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas* and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Issa v. Texas Dep't of Crim. Just.*, No. 1:22-CV-01107-ADA, 2023 WL 4923971, at *5 (W.D. Tex. Aug. 1, 2023), *report and recommendation adopted*, No. 1:22-CV-01107-ADA, 2023 WL 5352319 (W.D. Tex. Aug. 18, 2023) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting FED. R. CIV. P.

8(a)(2))). At this stage of the proceeding, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss. *Id.* at *7 (citing *Twombly*, 550 U.S. at 547). The Court finds Plaintiff has alleged sufficient facts, interpreted in the light most favorable to him, regarding whether an adverse employment action was taken against him because of his protected status and "nudged [his] claims across the line from conceivable to plausible."[2] *Id.* Therefore, the undersigned recommends TAMUT's motion to dismiss be denied.

### V. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's First Amended Original Complaint (Dkt. No. 17) be **DENIED**.

Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

---

[2] Although not necessary to establish in order to survive a motion to dismiss, Plaintiff argues he has sufficiently pleaded a *prima facie* case of race discrimination. Dkt. No. 19 at 5-7. In order to establish a *prima facie* claim of discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) replaced by someone outside of his protected class or that others outside of his protected class and similarly situated were treated more favorable. *Booker v. DeJoy*, No. 5:22-CV-180-DAE, 2022 WL 21536551, at *2 (W.D. Tex. Sept. 29, 2022) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802) (emphasis added). According to Plaintiff, TAMUT does not dispute that Plaintiff was a member of a protected class, that he was qualified for his position, or that he was subject to an adverse employment action. Dkt. No. 19 at 5 (citing Dkt. No. 17 at 4-5). Regarding the fourth element, although TAMUT argues Plaintiff did not plead that others similarly situated were treated more favorably, Plaintiff has pleaded that he was replaced by an African-American female. *Id.* at 6 (citing Dkt. No. 11, ¶ 15). While this appears to be persuasive, the undersigned does not need to reach this argument.

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 26th day of January, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE